SUTHERLIN, Appellee,

v.

INTERSTATE BRANDS CORPORATION, Appellant;
Ohio Bureau of Employment Services.

[Cite as *Sutherlin v. Interstate Brands Corp.* (1992), 79 Ohio App.3d 635.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910350.

Decided April 1, 1992.

*Dave R. West,* for appellee.

*Frost & Jacobs* and *Raymond D. Neusch,* for appellant.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignment of error, and the briefs and arguments of counsel. We have *sua sponte* removed this cause from the accelerated calendar.

The defendant-appellant, Interstate Brands Corporation, appeals from the trial court's reversal of the order of the Unemployment Compensation Board of Review ("board") which denied unemployment compensation benefits to the plaintiff-appellee, Edward S. Sutherlin. For the reasons which follow, the decision of the trial court is reversed.

The appellee, a "breadcatcher," was an employee of the appellant for approximately ten years. During that time, the appellant had in effect a "no-fault" attendance-control point system which imposed whole or fractional points upon an employee for absences and tardiness, and for leaving work prior to the end of a shift. The policy's disciplinary procedure provided that written warnings would be issued to an employee who accumulated four and six points; that a three-day suspension would be meted out to any employee who accumulated eight points; and that the employee would be discharged from employment after being assessed his tenth point. The policy automatically subtracted a point if no infraction occurred within a two-month period. Moreover, the employee was not penalized for specific personal absences.

In the instant case, the appellee accumulated his tenth point, and his employment with the appellant was terminated, when he left the job site prior to having completed four hours of work. Although the appellee does not challenge the first nine attendance points assessed against him or the validity of the no-fault policy, he claims that the final point was improperly imposed by the appellant because he did not willingly leave the premises prior to working four hours. Rather, he was arrested by police officers on a warrant charging him with receiving stolen property.[1]

Following his dismissal, the appellee applied for unemployment compensation benefits, but his claim was denied by the Administrator of the Ohio Bureau of Employment Services ("Administrator"). The appellee appealed this decision to the board, which affirmed the Administrator's denial of benefits. Appellee, thereafter, appealed to the Hamilton County Court of Common Pleas pursuant to R.C. 4141.28(O). The trial court, in reversing the decision of the board, found that the assessment of the tenth point was not

---

1. Subsequent to his arrest, appellee made bail and the charges were later dismissed.

unreasonable under the circumstances, but held that "to discharge [the appellee] after ten years of employment, on the basis of this incident, is not what the legislature intended as a discharge for 'just cause' in connection with his work."

On appeal to this court, the appellant urges, in its single assignment of error, that the trial court erred by reversing the decision of the board and finding that appellee was not discharged for cause within the meaning of R.C. 4141.29(D)(2)(a). This assignment is well taken.

R.C. 4141.29(D)(2)(a) provides that:

"(D) Notwithstanding division (A) of this section, no individual may * * * be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

It is clear that an employee may be denied participation in the Unemployment Compensation Fund if he is terminated for just cause under this provision. See *Myers v. Ohio Bur. of Emp. Serv.* (Nov. 23, 1987), Ross App. No. 1366, unreported, 1987 WL 20389. The existence of "just cause" is generally an issue reserved for the trier of fact to decide, *Myers, supra;* however, it has been defined as "that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589. "[E]xcessive absenteeism and tardiness can be the basis for discharge for good cause." *Mohawk Tools v. Ohio Bur. of Emp. Serv.* (Mar. 14, 1986), Williams App. No. WMS–85–15, unreported, 1986 WL 3251. Moreover, this court, in *Johnson & Hardin Co. v. Ohio Bur. of Emp. Serv.* (June 28, 1989), Hamilton App. No. C–880319, unreported, 1989 WL 71863, rejected the argument that a "no fault" policy which fails to consider underlying reasons for absences cannot satisfy the just-cause standard for employee discharge under R.C. 4141.29(D)(2)(a). Clearly, the purpose of this policy is to (1) provide the worker with control over his continued employment with the company, and (2) relieve the employer of the task of determining whether an employee has a valid or exculpating reason for absences.

In the instant case, the trial court, in reversing the decision of the board, merely focused upon the circumstances underlying the assessment of the tenth point against the appellee. Such a piecemeal analysis is contrary to the function of the attendance-control policy and ignores the appellee's numerous absences from work during the entire twelve-month period.

We hold, therefore, that there was competent, credible evidence in the record to support the decision of the board that the appellee's dismissal was a discharge for just cause, and that the trial court, in reversing that decision, improperly substituted its judgment and acted contrary to law. See *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280.

Accordingly, we validate the appellant's assignment of error, reverse the decision of the trial court, and reinstate the order of the board denying appellee unemployment compensation benefits.

*Judgment accordingly.*

SHANNON and DOAN, JJ., concur.

GORMAN, P.J., dissents.

GORMAN, P.J., dissenting.

The majority's reliance on our decision in *Johnson & Hardin Co. v. Ohio Bur. of Emp. Serv.* (June 28, 1989), Hamilton App. No. C–880319, unreported, 1989 WL 71863, does not support a reversal. In that case we observed that discharge under an employer's "no fault" attendance policy may not constitute "just cause" under R.C. 4141.29(D)(2)(a) if the employee is not at fault. However, in *Johnson & Hardin Co., id.,* the general fairness of the employer's policy was not an issue before the referee, and, therefore, on the record we held that the claimant did not satisfy his burden of establishing that he was entitled to unemployment compensation benefits.

What constitutes "just cause" under R.C. 4141.29(D)(2)(a) is a question of fact which depends on "the unique factual considerations of the particular case." *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587. To an ordinarily intelligent person, just cause is "a justifiable reason for doing or not doing a particular act." *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 9, 335 N.E.2d 751, 752. The record does not disclose whether the employer's "no fault" policy was the product of a unilateral rule, a collective-bargaining agreement, or an express or implied contract; however, appellate courts uniformly agree that to constitute "just cause," the conduct need not rise to the level of misconduct, but the employee must in some way be at fault. *Waddell v. Barkan & Neff Co., L.P.A.* (1989), 62 Ohio App.3d 158, 574 N.E.2d 1148; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280; *Sellers v. Bd. of Review* (1981), 1 Ohio App.3d 161, 1 OBR 473, 440 N.E.2d 550. Absence, for example, because of a bona fide illness, verified by a doctor and undisputed by the employer, has been held not to be just cause for

discharge under R.C. 4141.29. *Schultz v. Herman's Furniture, Inc.* (1976), 52 Ohio App.2d 161, 6 O.O.3d 159, 368 N.E.2d 1269.

In reversing the referee and the board of review, the trial court concluded that assessment of the tenth point was reasonable, but based on the incident and Sutherlin's ten years of employment, the discharge did not constitute "just cause" for purposes of denying unemployment compensation benefits. This holding is consistent with the principle that justification for terminating an employee "does not *ipso facto* constitute just cause for discharge under R.C. 4141.29." *Sellers v. Bd. of Review, supra,* 1 Ohio App.3d at 164, 1 OBR at 475, 440 N.E.2d at 553.

A common pleas court may reverse a decision of the referee and the board of review if it is unlawful, unreasonable, or against the manifest weight of the evidence as provided in R.C. 4141.28(O). Although the credibility of the witnesses and the weight to be given to the evidence are matters for the referee and the board, a reviewing court must reverse a decision which reaches an unreasonable conclusion from essentially undisputed facts in the administrative record. *Waddell v. Barkan & Neff Co., L.P.A., supra,* citing *Opara v. Carnegie Textile Co.* (1985), 26 Ohio App.3d 103, 26 OBR 312, 498 N.E.2d 485. While the common pleas court cannot substitute its judgment for the board of review's on the facts, if the determination was based upon the manifest weight of the evidence, an appellate court should reverse the common pleas court's decision only upon a showing of abuse of discretion. *Angelkovski v. Buckeye Potato Chips Co., supra.*

In the case *sub judice,* the facts are not disputed. Sutherlin's arrest at work and his involuntary removal from his job as the result of a criminal charge that was ultimately dismissed do not demonstrate fault sufficient to warrant his discharge for just cause as provided in R.C. 4141.29(D)(2)(a). It was reasonable for the trial court to find that the decision of the board of review was against the manifest weight of the evidence. In its decision the majority acknowledges that a purpose of the employer's policy is to give the worker "control over his continued employment." Unlike an employee who has control by making the choice to work despite being sick, Sutherlin had no control, whatsoever, over his apparently groundless arrest.

The trial court's reversal of the decision of the board of review under these facts is consistent with the humanitarian purpose of Ohio's unemployment compensation legislation. See *Irvine v. Unemp. Comp. Bd. of Review, supra,* 19 Ohio St.3d at 17, 19 OBR at 14, 482 N.E.2d at 589. Accordingly, the trial court did not abuse its discretion in finding that the decision of the board of review was against the manifest weight of the evidence and contrary to law where the record contains no evidence of fault on the part of Sutherlin.